EXHIBIT A



Minst

# NEW YORK BALLOON NOTE
**(Fixed Rate)**

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

December 13, 2005                    BROOKLYN                    New York
[Date]                               [City]                      [State]

1 EAST 72ND STREET, Brooklyn, NY  11234
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S.$ 160,000.00                    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is American Home Mortgage

I will make all payments under this Note in the form of cash, check or money order.
    I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**
    Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        7.500  %.
    The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.    PAYMENTS**
    (A) Time and Place of Payments
    I will pay principal and interest by making a payment every month.
    I will make my monthly payments on the  1st       day of each month beginning on  February 1, 2006
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on January 1, 2009                        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at  PO Box 660029, Dallas, TX  75266-0029

or at a different place if required by the Note Holder.
    (B) Amount of Monthly Payments
    My monthly payment will be in the amount of U.S. $  1,118.74

DOC                          APPL
NEW YORK BALLOON FIXED RATE NOTE - Single  Family - FANNIE MAE UNIFORM INSTRUMENT        Form 3260.33 1/01
                                        (page 1 of 3)
-870N(NY) (0409)       0421 0400       VMP MORTGAGE FORMS - (800)521-7291        Initials

**4.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of     15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
2.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**7.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.    UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

DOC # ▮▮▮▮    APP # ▮▮▮▮

▮▮▮-0700(NY)    (0008)    Page 2 of 3    Form 3240.33 1/01
Initials ▮▮

### AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require Immediate Payment in Full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require Immediate Payment in Full if this is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Paragraph 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given in accordance with Section 15. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)      _____ (Seal)
-Borrower                              -Borrower

_____ (Seal)      _____ (Seal)
-Borrower                              -Borrower

_____ (Seal)      _____ (Seal)
-Borrower                              -Borrower

_____ (Seal)      _____ (Seal)
-Borrower                              -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF

Ohio Savings Bank

ASST SECRETARY

## ALLONGE

THIS ALLONGE IS TO BE ATTACHED TO AND MADE AN INTEGRAL PART of the following instrument:

Note: New York Balloon Note
Dated: December 13, 2005
Payable by: Yan Klig
Payable to the Order of: American Home Mortgage
Original Principal Amount: One Hundred Sixty Thousand and No/100ths Dollars
($160,000.00)

PAY TO THE ORDER OF  AMTRUST-NP  SFR  VENTURE,  LLC,  WITHOUT RECOURSE  AND  WITHOUT  REPRESENTATION  OR  WARRANTY,  EXPRESS, IMPLIED OR BY OPERATION OF LAW, OF ANY KIND AND NATURE WHATSOEVER.

**FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR AMTRUST BANK OF CLEVELAND, OHIO, FKA OHIO SAVINGS BANK**

By:
Name:       Alicia Wood
Title:        Attorney in Fact

# New York Balloon Note Rider

**Borrower Name(s):**

YAN KLIG

**Lender:**

American Home Mortgage
538 Broadhollow Rd
Melville, NY 11747

**Date:**

October 28, 2005

**Property Address:**

1 EAST 72ND STREET
Brooklyn, NY 11234

THE TERM OF THE LOAN IS    30    YEARS. AS A RESULT, YOU WILL BE REQUIRED TO REPAY THE ENTIRE PRINCIPAL BALANCE AND ANY ACCRUED INTEREST THEN OWING    3    YEARS FROM THE DATE ON WHICH THE LOAN IS MADE.

THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM. THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

ASSUMING THIS LENDER OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

_____ Date    _____ Date
YAN KLIG

_____ Date    _____ Date

_____ Date    _____ Date

_____ Date    _____ Date

Prepared by: **Fred Jesse**
When Recorded Mail To:
Ocwen Loan Servicing, LLC
5720 Premier Park Dr.
West Palm Beach, FL 33407
Phone Number: 561-682-8835

## ALLONGE

BORROWERS: **YAN KLIG**

PRESENT OWNER AND HOLDER: **AMTRUST-NP-SFR VENTURE, LLC**

NOTE EXECUTION DATE: **DECEMBER 13, 2005**

NOTE AMOUNT: **$ 160, 000.00**

PROPERTY ADDRESS: **1 EAST 72ND STREET, BROOKLYN, NY 11234**

This allonge shall be annexed to the original Note, referenced above for purposes of transferring same from the present Owner and Holder of the Note, **AMTRUST-NP-SFR VENTURE, LLC.** ("Transferor"). As a result of said transfer, **AMTRUST-NP-SFR VENTURE, LLC.** has no further interest in the Note.

Pay to the order of

**MTGLQ INVESTORS, L.P.,** without recourse, representation or warranty express or implied.

**AMTRUST-NP-SFR VENTURE, LLC.**

By: _____
Name: Alicia Wood
Title: Vice President - Servicing

*Q(*

Loan Number: ████████

Borrower:         YAN KLIG
Property Address: 1 EAST 72ND ST., BROOKLYN, NY 11234
Loan Amount:      $160,000.00

## Note Allonge

For the purpose of endorsement of the attached Note, this Allonge is affixed and becomes a
permanent part of said Note.

Pay to the Order of:

## MTGLQ Investors, LP

Without Recourse

AmTrust NP-SFR Venture, LLC

By: *Lynn Bluege-Rust*

Name:   Lynn Bluege-Rust, Attorney in Fact

# ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED
NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID
NOTE.

Account Number: ████████

Note Date: **12/13/2005**

Amount: **$160,000.00**

Borrower Name: **YAN CLIG**

Property Address: **1 EAST 72ND STREET, BROOKLYN, NY 11234**

PAY TO THE ORDER OF:

_____

WITHOUT RECOURSE

**MTGLQ INVESTORS, L.P.**

BY: ANDREA RHINEHARDT
Title: **VICE PRESIDENT**

| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER |  |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | 2005121300046002001E0BE5 |

## RECORDING AND ENDORSEMENT COVER PAGE

**PAGE 1 OF 20**

| Document ID: 2005121300046002 | Document Date: 12-13-2005 | Preparation Date: 12-14-2005 |
|---|---|---|

Document Type: MORTGAGE
Document Page Count: 18

| PRESENTER: | RETURN TO: |
|---|---|
| TITLECRAFTERS, INC., (PICK-UP RSR)<br>1315B BROADWAY, SUITE 111<br>TCI-03634 (AGENT FOR OLD REPUBLIC TITLE)<br>HEWLETT, NY 11557<br>516-569-5844<br>TITLECRAFTERS@AOL.COM | AMERICAN HOME MORTGAGE<br>520 BROADHOLLOW ROAD<br>MELVILLE, NY 11747 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 8369 | 362 | Entire Lot | N/A EAST 72 STREET |

Property Type: RESIDENTIAL VACANT LAND

### CROSS REFERENCE DATA

CRFN_____ *or* Document ID_____ *or* _____ Year_____ Reel___ Page_____ *or* File Number_____

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| YAN KLIG<br>22 BAY 37TH STREET<br>BROOKLYN, NY 11217 | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC<br>P.O. BOX 2026<br>FLINT, MI 48501 |
| x Additional Parties Listed on Continuation Page | |

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 127.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 160,000.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 160,000.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 800.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 1,600.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 400.00 | | |
| MTA: | $ | 450.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 3,250.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed     12-20-2005 12:40
City Register File No.(CRFN):

**2005000699441**

*Annetta M Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2005121300046002001C0965

**RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)    PAGE 2 OF 20**

| | | |
|---|---|---|
| Document ID: 2005121300046002 | Document Date: 12-13-2005 | Preparation Date: 12-14-2005 |
| Document Type: MORTGAGE | | |

**PARTIES**
**MORTGAGER/BORROWER:**
LEONID MANDEL
22 BAY 37TH STREET
BROOKLYN, NY 11217

Return To:
American Home Mortgage
520 Broadhollow Road
Melville, NY 11747

Prepared By:

Christine Zindulka
520 Broadhollow Road
Melville, NY 11747    [Space Above This Line For Recording Data]

# MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated    December 13, 2005
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower."    YAN KLIG & Leonid Mandel

whose address is  22 BAY 37TH STREET, NEW YORK, NY  11214
                        sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under
the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE
MORTGAGEE OF RECORD.**
(D) "Lender."    American Home Mortgage

will be called "Lender." Lender is a corporation or association which exists under the laws of
State of New York                    . Lender's address is  538 Broadhollow Rd,
Melville, NY  11747                    .

This property is or will be principally improved by a one- or two- family
house or dwelling only.

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS      Form 3033 1/01

-6A(NY) (0005)
Page 1 of 15    Initials
VMP MORTGAGE FORMS - (800)521-7291

**(E) "Note."** The note signed by Borrower and dated   December 13, 2005              , will be called the "Note." The Note shows that I owe Lender   One Hundred Sixty Thousand and No/100

                    Dollars (U.S. $ 160,000.00                    )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by   January 1, 2009   .
**(F) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."
**(G) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."
**(I) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☒ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(J) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."
**(K) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."
**(L) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."
**(N) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."
**(O) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."
**(Q) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

6A(NY) (0305)                     Page 2 of 17                          Form 3033 1/01

Title No. ████████

**SCHEDULE "A"**

ALL that certain plot, piece, or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southwesterly side of East 72nd Street, (as now open and in use, 60 feet wide), distant 164 feet 0 inches southeasterly from the corner formed by the intersection of the southwesterly side of East 72nd Street, with the southeasterly side of Bergen Court, (a private right of way, 50 feet wide);

running thence southwesterly at right angles to the said southwesterly side of East 72nd Street, 92 feet 0-1/2 inches to a point;

thence southeasterly along a line drawn at an interior angle of 52 degrees 31 minutes 0 seconds, with the last mentioned course, 105 feet 1 inch to a point;

thence southwesterly along a line drawn at an exterior angle of 270 degrees 0 minutes 0 seconds, with the last mentioned course, 17 feet 6 inch to a point;

thence southeasterly along a line at right angles with the last mentioned course, 68 feet 11-3/4 inches to the said southwesterly side of East 72nd Street;

and thence northwesterly along the said southwesterly side of East 72nd Street, 148 feet 9-1/4 inches to the point or place of BEGINNING.

FOR CONVEYANCE ONLY
not for policy
{Being a portion of the premises as described
in a deed to the party of the first part
recorded in Reel 4504 pg 1984.

FOR CONVEYANCING ONLY IF
INTENDED TO BE CONVEYED
{Together with all rights, title and interest
of, in and to any streets and roads abutting
the above described premises, to the center
line thereof.

FOR INFORMATION ONLY
Said premises being a plot of Vacant land on East 72nd Street,
                                  Brooklyn, New York
County:    Kings              Block:    8369    Lot:   362

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at

1 EAST 72ND STREET                                                        [Street]
Brooklyn                          [City, Town or Village] , New York 11234      [Zip Code].
This Property is in                                    Kings      County. It has the following legal description:

SEE ATTACHED LEGAL DESCRIPTION

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

_____

6A(NY) (0026)                              Page 2 of 17                              Form 3033 1/01

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

-6A(NY) (0705)                    Page 4 of 17                    Form 3033 1/01

Initials: [signature]

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

Initials: 

-6A(NY) (0009)    Page 5 of 17    Form 3033 1/01

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior

to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument; then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Borrower's Obligations to Occupy The Property. I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.

(a) Maintenance and Protection of the Property.

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If Insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the Insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) Lender's Inspection of Property.

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

-6A(NY) (0205)    Page 6 of 17    Initials:    Form 3033 1/01

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the



-5A(NY)    Page 10 of 17                                    Form 3033 1/01

Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives me notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing

f:0001062689

any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14. **Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. **Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

18. **Agreements about Lender's Rights if the Property is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

Initials:

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which

will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice . and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. Continuation of Borrower's Obligations to Maintain and Protect the Property. The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

-6A(NY) (0203)                              Page 14 of 17                                    Form 3033 1/01

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

-6A(NY) (0205)    Page 15 of 17    Initials: [signature]    Form 3033 1/01

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____     _____ (Seal)
YAN KLIG     -Borrower

_____     _____ (Seal)
Leonid Mandel     -Borrower

_____ (Seal)     _____ (Seal)
-Borrower     -Borrower

_____ (Seal)     _____ (Seal)
-Borrower     -Borrower

_____ (Seal)     _____ (Seal)
-Borrower     -Borrower

Form 3033 1/01

**STATE OF NEW YORK,**  KINGS  County ss:

On the    13th    day of    December, 2005    before me, the undersigned, a notary public in and for said state, personally appeared  YAN KLIG & Leonid Manolel

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

AVROHOM BIRNBAUM
Notary Public State of NY
No. 01BI6047128
Qualified in Kings County
Comm. Expires 07/24/2009

Tax Map Information:

-6A(NY) 6985    Page 17 of 17    Form 3033 1/01

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



2006090200070001002E064D

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| Document ID: 2006090200070001 | Document Date: 07-31-2006 | Preparation Date: 09-05-2006 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 3 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| BARRY CAMPBELL | RELIN GOLDSTEIN & CRANE LLP |
| PO BOX 263 | 28 EAST MAIN STREET |
| BROOKLYN, NY  11201 | SUITE 1800 |
| 917-301-6775 | ROCHESTER, NY  14614 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 8369 | 362 | Entire Lot | N/A EAST 72 STREET |
| | Property Type: | RESIDENTIAL VACANT LAND | | |

### CROSS REFERENCE DATA

CRFN: 2005000699441

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| AMERICAN HOME MORTGAGE | OHIO SAVINGS BANK |
| 1595 ASPRING HILL ROAD, #310 | G-4318 MILLER ROAD |
| VIENNA, VA  22182 | FLINT, MI  48507 |

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 52.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Affidavit Fee:  $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax Filing  Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 0.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed          09-06-2006 10:52
City Register File No.(CRFN):
2006000502048

*City Register Official Signature*

**NEW YORK**

# ASSIGNMENT OF MORTGAGE

COUNTY OF *KINGS (A)*
LOAN NO. ████████
POOL NO.
TOWN OF.

KNOW THAT *MORTGAGE ELECTRONIC REGISTRATION SYSTEMS AS NOMINEE FOR AMERICAN HOME MORTGAGE,*

located at *1595 SPRING HILL ROAD, #310, VIENNA, VA 22182*
(ASSIGNOR), in consideration of TEN DOLLARS ($10.00) paid by *OHIO SAVINGS BANK*

hereby  assigns unto the (ASSIGNEE)*OHIO SAVINGS BANK*

located at *G-4318 MILLER ROAD, FLINT, MI 48507*
A certain Mortgage dated the *13th* day of *DECEMBER 2005*        made by *YAN KLIG &*
*LEONID MANDEL*

to *AMERICAN HOME MORTGAGE*
in the principal sum of *160,000.00*
and recorded on the ___*20*___ day of *December, 2005*
in Liber/Reel number _____ of Mortgage Page ____
Document Number *CRFN 2005006341* Serial no. ____
in the office of *KINGS*
particularly described hereinafter as follows:                    County New York more
*AS DESCRIBED ON SAID MORTGAGE REFERRRED TO HEREIN.*
Section ___    Block *R369*       Lot *362*
PROPERTY ADDRESS: *1323 EAST 70TH STREET, BKLYN NY 11234*

As previously recorded from ___*N/A*___
to _____
on _____ in Liber/Reel _____ of Deed Page _____ **Doc#**
and from _____
to _____
on _____ in Liber/Reel _____ of Deed Page _____ **Doc#**
and from _____
to _____
on _____ in Liber/Reel _____ of Deed Page _____

MI████████  **MERS PHONE: 1-888-679-6377**
Page 1 of 2

Loan No. ████████

TOGETHER with the bond or note or obligation described in said mortgage and the monies due and to grow due thereon with the interest; TO HAVE AND TO HOLD the same unto the assignee and to the successors, legal representatives and assigns of the assignee forever.
The word "assignor" or "assignee" shall be construed as if it read "assignors" or "assignees" whenever the sense of this instrument so requires. This assignment is not subject to the requirements of sect-ion 275 of the Real Property Law because it is an assignment within the secondary mortgage market.
IN WITNESS WHEREOF, the assignor has duly executed this assignment this **31st** day of **JULY 2006** but effective the 20th day of July, 2006.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS AS NOMINEE FOR AMERICAN HOME MORTGAGE

BY _____        BY _____
   Jarrod Hira y                       Jasin E. Csuti

STATE OF ___Ohio___ )
                     ) ss
COUNTY OF ___Cuyahoga___ )

On the **31st** day of **JULY 2006** before me, the undersi-gned personally appeared Jarrod (Hira) and Jasin Csuti, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the County of ___Cuyahoga___, State of ___Ohio___.

_____
NOTARY PUBLIC

**SEAL**
DOROTHY SANDIFER
Notary Public, State of Ohio
My Commission Expires
February 11, 2009
Recorded in Cuyahoga County
Page 2 of 2

PREPARED BY SECURITY CONNECTIONS, INC.
WHEN RECORDED MAIL TO:
SECURITY CONNECTIONS INC.
1935 INTERNATIONAL WAY
IDAHO FALLS, ID 83402
PH: (208)528-9895

(NMRI.NY)

C=S.040.0002
P=S.002.00007.215

MIN ████████████        MERS PHONE: 1-888-679-6377
J=O88120105AI.S.00466

# SCHEDULE A

## DESCRIPTION OF MORTGAGED PREMISES

ALL that certain plot, piece, or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southwesterly side of East 72nd Street, (as now open and in use, 60 feet wide), distant 164 feet 6 inches southeasterly from the corner formed by the intersection of the southwesterly side of East 72nd Street, with the southeasterly side of Bergen Court, (a private right of way, 50 feet wide);

running thence southwesterly at right angles to the said southwesterly side of East 72nd Street, 92 feet 0-1/2 inches to a point;

thence southeasterly along a line drawn at an interior angle of 52 degrees 31 minutes 0 seconds, with the last mentioned course, 105 feet 1 inch to a point;

thence southwesterly along a line drawn at an exterior angle of 270 degrees 0 minutes 0 seconds, with the last mentioned course, 17 feet 6 inch to a point;

thence southeasterly along a line at right angles with the last mentioned course, 60 feet 11-3/4 inches to the said southwesterly side of East 72nd Street;

and thence northwesterly along the said southwesterly side of East 72nd Street, 148 feet 9-1/4 inches to the point or place of BEGINNING.

*PREMISES IS IMPROVED BY RESIDENTIAL VACANT LAND*



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2011062100572001001EF776

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

| | | |
|---|---|---|
| **Document ID:** 2011062100572001 | Document Date: 06-15-2011 | Preparation Date: 06-21-2011 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 1 | | |

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| HOLD FOR PICK-UP CY RECORDINGS | HOLD FOR PICK-UP CY RECORDINGS |
| PRIME TITLE-PT47018 | PRIME TITLE-PT47018 |
| ONE HUNTINGTON QUADRANGLE SUITE 2S04 | ONE HUNTINGTON QUADRANGLE SUITE 2S04 |
| MELVILLE, NY 11747 | MELVILLE, NY 11747 |
| 516-408-1297 | 516-408-1297 |
| mbrenner@primetitlellc.com | mbrenner@primetitlellc.com |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 8369 | 362 | Entire Lot | | N/A EAST 72ND STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

**CROSS REFERENCE DATA**

CRFN: 2005000699441

x   Additional Cross References on Continuation Page

**PARTIES**

| **ASSIGNOR/OLD LENDER:** | **ASSIGNEE/NEW LENDER:** |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION | RESIDENTIAL CREDIT SOLUTIONS INC |
| 4318 MILLER ROAD | 4282 N FREEWAY |
| FLINT, MI 48507 | FT WORTH, TX 76137 |

x   Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 42.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    07-01-2011 10:11
City Register File No.(CRFN):
**2011000232156**

*City Register Official Signature*



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2011062100572001001CF5F0

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 3 |
|---|---|

Document ID: 2011062100572001    Document Date: 06-15-2011    Preparation Date: 06-21-2011
Document Type: ASSIGNMENT, MORTGAGE

**CROSS REFERENCE DATA**
CRFN: 2006000502048
CRFN: 2011000131594

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNOR/OLD LENDER: |
|---|---|
| AMTRUST BANK | OHIO SAVINGS BANK |
| 4318 MILLER ROAD | 4318 MILLER ROAD |
| FLINT, MI 48507 | FLINT, MI 48507 |



# ASSIGNMENT OF MORTGAGE

Know that,

Federal Deposit Insurance Corporation as Receiver for AmTrust Bank f/k/a Ohio Savings Bank, 4318 Miller Road, Flint, MI 48507, assignor,

in consideration of the sum of One and No/100th Dollars and other good valuable consideration dollars, paid by

Residential Credit Solutions, Inc., 4282 N Freeway, Ft. worth, TX 76137, assignee

hereby assigns unto the assignee, a certain mortgage made by YAN KLIG and LEONID MANDEL, given to Mortgage Electronic Registration Systems, Inc as nominee for American Home Mortgage to secure payment of the sum of One hundred and sixty thousand dollars ($160,000.00) and interest, dated the 13th day of December, 2005, recorded on the 20th day of December, 2005, in the Office of the City Register of the City of New York, at Instrument No. 2005000699441,

covering premises 1 EAST 72ND STREET, BROOKLYN, NY 11234, SBL #Block: 8369 Lot: 362, County of Kings

together with the bond or obligation described in said mortgage, and the moneys due and to grow due thereon with the interest,

Which mortgage was previously assigned by Mortgage Electronic Registration Systems, Inc as nominee for American Home Mortgage to Ohio Savings Bank by assignment dated the 31st day of July, 2006 and recorded on the 6th day of September, 2006 at Instrument No. 2006000502048.

This said mortgage has not been otherwise assigned of record.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage and Note.

THIS Assignment is not subject to the requirement of Section 275 of the Real Property Law because it is within the secondary mortgage market.

IN WITNESS WHEREOF, the Assignor has caused these presents to be signed by its duly authorized officer this 15 day of June, 20 11.

IN PRESENCE OF    AIF POA recorded 4/11/11 CRFN 2011000131594

Federal Deposit Insurance Corporation as Receiver for AmTrust Bank f/k/a Ohio Savings Bank

BY:

Name: Alicia Wood

Title: Alicia Wood Attorney in Fact

State of Texas
County of Tarrant    ss:
On the 15 day of June in the year 2011 before me, the undersigned, a notary public in and for said state, personally appeared Alicia Wood, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument and that such individual made such appearance before the undersigned in the Tarrant. (Insert city or political subdivision and state or other place acknowledgment taken— if acknowledgment is taken outside of New York State)

Notary Public

KRISTINA C. DAVIS
Notary Public
STATE OF TEXAS
My Comm. Exp. 11/30/2013

SEAL

RtK
Steven J. Baum, P.C.
220 Northpointe Pkwy., Suite B
Amherst, NY 14228
PT 47018



| **NYC DEPARTMENT OF FINANCE**<br>**OFFICE OF THE CITY REGISTER**<br><br>This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | |
|---|---|
| | 2014102100246001001EED86 |

## RECORDING AND ENDORSEMENT COVER PAGE

**PAGE 1 OF 4**

| Document ID: **2014102100246001** | Document Date: **05-22-2014** | Preparation Date: **10-21-2014** |
|---|---|---|
| Document Type: **ASSIGNMENT, MORTGAGE** | | |
| Document Page Count: **2** | | |

| PRESENTER: | RETURN TO: |
|---|---|
| ** PICK-UP STEVE KINGSLAND EXAMINERS **<br>WEBTITLE AGENCY 14-034971 MA<br>500-A CANAL VIEW BOULEVARD<br>ROCHESTER, NY 14623<br>585-454-4770<br>DREYES@WEBTITLE.US | ** PICK-UP STEVE KINGSLAND EXAMINERS **<br>WEBTITLE AGENCY 14-034971 MA<br>500-A CANAL VIEW BOULEVARD<br>ROCHESTER, NY 14623<br>585-454-4770<br>DREYES@WEBTITLE.US |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 8369 | 362 | Entire Lot | N/A EAST 72ND STREET |

Property Type: **RESIDENTIAL VACANT LAND**

### CROSS REFERENCE DATA

CRFN: **2005000699441**
☒ Additional Cross References on Continuation Page

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| RESIDENTIAL CREDIT SOLUTIONS, INC.<br>4282 N. FREEWAY<br>FT. WORTH, TX 76137 | MTGLQ INVESTORS, L.P.<br>5720 PREMIER PARK DRIVE<br>WEST PALM BEACH, FL 33407 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed         11-05-2014 12:00 | | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | 47.00 | **2014000366283** | | |
| Affidavit Fee: | $ | 0.00 | | | |
| | | | *City Register Official Signature* | | |

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2014102100246001001CEF06

RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)    PAGE 2 OF 4

| | | |
|---|---|---|
| Document ID: 2014102100246001 | Document Date: 05-22-2014 | Preparation Date: 10-21-2014 |
| Document Type: ASSIGNMENT, MORTGAGE | | |

**CROSS REFERENCE DATA**
CRFN: 2006000502048
CRFN: 2011000232156

Record & Return
Web Title Agency
500-A Canal View Boulevard
Rochester, NY 14623

## ASSIGNMENT OF MORTGAGE
## NEW YORK

This ASSIGNMENT OF MORTGAGE from **RESIDENTIAL CREDIT SOLUTIONS, INC**, whose address is 4282 N FREEWAY, FT. WORTH, TX 76137 ("Assignor") to **MTGLQ INVESTORS, L.P.** whose address is c/o Ocwen Loan Servicing, LLC. 5720 Premier Park Dr, West Palm Beach, FL 33407 ("Assignee").

For the sum of ten dollars ($10.00) cash and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, assign, transfer and set over unto the Assignee, its successors, transferees and assigns forever, all of the rights, title and interest of said Assignor in and to the following instrument describing land therein, duly recorded in the Office of the County Recorder of KINGS County, State of NEW YORK, as follows:

Borrower: YAN KLIG AND LEONID MANDEL
Lender: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,(MERS) SOLELY AS NOMINEE FOR AMERICAN HOME MORTGAGE
OPB: $160,000.00
Document Date: DECEMBER 13, 2005
Date Recorded: DECEMBER 20, 2005
Instrument Number: 2005000699441
Property Address: 1 EAST 72ND STREET, BROOKLYN, NY 11234
Property described as follows:

SECTION: 25          BLOCK: 8369          LOT: 362

Said Mortgage was assigned from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,(MERS) SOLELY AS NOMINEE FOR AMERICAN HOME MORTGAGE to OHIO SAVINGS BANK  by instrument dated JULY 31, 2006 and recorded on SEPTEMBER 06, 2006 AS Instrument # 2006000502048

Said Mortgage was assigned from OHIO SAVINGS BANK to RESIDENTIAL CREDIT SOLUTIONS, INC by instrument dated JUNE 15, 2011 and recorded on JULY 01, 2011 AS Instrument # 2011000232156

Prepared by: David Santa   / MM
When Recorded Mail To:
Ocwen Loan Servicing, LLC
5720 Premier Park Dr,
West Palm Beach, FL 33407
Phone Number: 561-682-8835

If this loan is secured by an interest in a cooperative Apartment, Assignor hereby assigns all of its right, title and interest in and to the Assignment of Lease and Stock Power executed by the borrower(s) in conjunction with the loan.

This Assignment is not subject to the requirement of section two hundred seventy-five (275) and three hundred and twenty one (321) of the Real Property Law because it is an assignment within the secondary mortgage market.

This Assignment is made without warranty, express or implied, and without recourse to the Assignor in any event whatsoever.

Dated: _____ May ___ 22 _____, 2014

RESIDENTIAL CREDIT SOLUTIONS, INC.

BY: _____
NAME: _____ Alicia Wood _____
TITLE: ___ Vice President and Assistant Secretary

STATE OF ___ Texas ___        }
                               } SS.
COUNTY OF ___ Tarrant ___      }

On the 22 day of ___ May ___, in the year 2014, before me, the undersigned, personally appeared of ___ Alicia Wood ___, ___ Vice President and Assistant Secretary ___, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on the instrument, the individual(s) or person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the county of ___ Tarrant ___, State of ___ Texas ___.

Witness my hand and official seal.

_____
Notary - State of ___ Texas ___





NANI HUMPHREY
Notary Public, State of Texas
My Commission Expires
November 14, 2016



2021022600137001001EDD5A

## RECORDING AND ENDORSEMENT COVER PAGE    PAGE 1 OF 5

| Document ID: **2021022600137001** | Document Date: 12-22-2020 | Preparation Date: 02-26-2021 |
|---|---|---|
| Document Type: **ASSIGNMENT, MORTGAGE** | | |
| Document Page Count: 3 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| MERIDIAN ASSET SERVICES<br>3201 34TH STREET SOUTH<br>SUITE 310<br>SAINT PETERSBURG, FL 33711<br>SUPPORT@SIMPLIFILE.COM | MERIDIAN ASSET SERVICES LLC<br>3201 34TH STREET S SUITE B310<br>ST PETERSBURG, FL 33711<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 8369 | 362 | Entire Lot | N/A EAST 72 STREET |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN:    2005000699441

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| MTGLQ INVESTORS LP<br>2001 ROSS AVE, SUITE 2800<br>DALLAS, TX 75201 | US BANK TRUST NATIONAL ASSOCIATION<br>7114 E STETSON DR, SUITE 250<br>SCOTTSDALE, AZ 85251 |

☒  Additional  Parties Listed on Continuation  Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $    0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $    0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $    0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| NYCTA: | $ | 0.00 | Recorded/Filed    03-03-2021 13:17 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | |
| TOTAL: | $ | 0.00 | **2021000076260** | |
| Recording Fee: | $ | 52.00 | | |
| Affidavit Fee: | $ | 0.00 | *City Register Official Signature* | |

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2021022600137001001CDFBA

| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER | |
|---|---|

**RECORDING AND ENDORSEMENT COVER PAGE  (CONTINUATION)**          **PAGE 2 OF 5**

**Document ID: 2021022600137001**          Document Date: 12-22-2020          Preparation Date: 02-26-2021
Document Type: ASSIGNMENT, MORTGAGE

**PARTIES**
**ASSIGNEE/NEW LENDER:**
TIKI SERIES IV TRUST
7114 E STETSON DR, SUITE 250
SCOTTSDALE, AZ 85251

Recording Requested By:

Prepared By: **Audrey B Trumble**
**855-369-2410**
When recorded mail to:

Property Address:
**1352 EAST 72ND ST**
**BROOKLYN, NY 11234**
Property Location:
**Borough of BROOKLYN**
NY0-AM-ST█████  12/13/2020  AP005                          This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, **MTGLQ INVESTORS, L.P.**, the undersigned holder of the Mortgage described below (herein "Assignor") whose address is **2001 ROSS AVENUE, SUITE 2800, DALLAS, TX 75201** does hereby grant, sell, assign, transfer and convey unto **U.S. BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES IV TRUST** whose address is **7114 E Stetson Dr., Suite 250, Scottsdale, AZ 85251** all beneficial interest under a certain security instrument described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said security instrument.

| | |
|---|---|
| Mortgagee: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR AMERICAN HOME MORTGAGE, ITS SUCCESSORS AND ASSIGNS** |
| Made By: | **YAN KLIG & LEONID MANDEL** |
| Date of Mortgage: | **12/13/2005** |
| Original Loan Amount: | **$160,000.00** |
| Section: N/A    Lot: 362 | Block: 8369 |

Recorded in Kings County, NY on: 12/20/2005, book N/A, page N/A and instrument number 2005000699441

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

This Mortgage has not been assigned unless otherwise stated below:

**SEE EXHIBIT "A" ATTACHED**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Dated:
**12/22/2020**

**MTGLQ INVESTORS, L.P. BY CORELOGIC SOLUTIONS, LLC ITS ATTORNEY IN FACT BY POWER OF ATTORNEY RECORDED ON**

IN BOOK
PAGE _____, INSTRUMENT

POA BATCH #11900
POA WAS RECORDED IN NEW YORK COUNTY, NY
ON 6/11/2020  /INST: 2020000170160

By: _____
**Jessica Lykins, Assistant Vice President**

STATE OF TX
County of Dallas

On the _____ day of ___DEC 2 2 2020___, in the year 20_____, before me the undersigned, personally appeared **Jessica Lykins, Assistant Vice President of CORELOGIC SOLUTIONS, LLC AS ATTORNEY IN FACT FOR MTGLQ INVESTORS, L.P.** personally known to me or proved to me on the basis of satisfactory evidence, to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that (he)(she)(they) executed the same in (his)(her)(their) capacity(y)(ies), and that by (his)(her)(their) signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual(s) made such appearance before the undersigned in the **TX, Dallas** (add the city or political subdivision and the state or country or other place the acknowledgement was taken).

Ratanaphone Vilayleuth
Notary Public : _____
My commission expires : **3/6/2024**

RATANAPHONE VILAYLEUTH
Notary Public, State of Texas
Comm. Expires 03-06-2024
Notary ID 132302917

EXHIBIT "A"

**Assignment Chain**

| | |
|---|---|
| Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN HOME MORTGAGE, ITS SUCCESSORS AND ASSIGNS |
| Borrower: | YAN KLIG & LEONID MANDEL |
| Origination Balance: | $160,000.00 |
| Origination Date: | 12/13/2005 |
| Mortgage Recording Details: | Recorded: 12/20/2005; Book: N/A; Page: N/A; Instrument: 2005000699441 |

| | |
|---|---|
| Assigned From: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN HOME MORTGAGE, ITS SUCCESSORS AND ASSIGNS |
| To: | OHIO SAVINGS BANK |
| AOM Recording Details: | Recorded 09/06/2006; Book: N/A; Page: N/A; Instrument: 2006000502048 |

| | |
|---|---|
| Assigned From: | FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR AMTRUST BANK F/K/A OHIO SAVINGS BANK |
| To: | RESIDENTIAL CREDIT SOLUTIONS, INC. |
| AOM Recording Details: | Recorded 07/01/2011; Book: N/A; Page: N/A; Instrument: 2011000232156 |

| | |
|---|---|
| Assigned From: | RESIDENTIAL CREDIT SOLUTIONS, INC. |
| To: | MTGLQ INVESTORS, L.P. |
| AOM Recording Details: | Recorded 11/05/2014; Book: N/A; Page: N/A; Instrument: 2014000366283 |



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2021062101228001002E4A8C

## RECORDING AND ENDORSEMENT COVER PAGE

PAGE 1 OF 5

| | |
|---|---|
| **Documeut ID:** 2021062101228001 | **Document Date:** 03-17-2021 | **Preparation Date:** 06-25-2021 |
| **Document Type:** ASSIGNMENT, MORTGAGE | | |
| **Document Page Count:** 3 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| MERIDIAN ASSET SERVICES | MERIDIAN ASSET SERVICES LLC |
| 3201 34TH STREET SOUTH | 3201 34TH STREET SOUTH SUITE B310 |
| SAINT PETERSBURG, FL 33711 | ST. PETERSBURG, FL 33711 |
| CATHERINELATELLA@SITUSAMC.COM | SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 8369 | 362 | Entire Lot | I EAST 72ND STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

**CRFN:** 2005000699441
☒ Additional Cross References on Continuation Page

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| US BANK TRUST NATIONAL ASSOCIATION | US BANK TRUST NATIONAL ASSOCIATION |
| 7114 E. STETSON DR. SUITE 250 | 7114 E. STETSON DR., SUITE 250 |
| SCOTTSDALE, AZ 85251 | SCOTTSDALE, AZ 85251 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 0.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |
| Recording Fee: | $ | 52.00 | |
| Affidavit Fee: | $ | 0.00 | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed        06-25-2021 09:47
City Register File No.(CRFN):
**2021000242269**

*Annetta M Hill*

**City Register Official Signature**

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2021062101228001001CB80C

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 5 |
|---|---|

**Document ID: 2021062101228001**    Document Date: 03-17-2021    Preparation Date: 06-21-2021
Document Type: ASSIGNMENT, MORTGAGE

---

**PARTIES**

**ASSIGNOR/OLD LENDER:**
TIKI SERIES IV TRUST
7114 E. STETSON DR. SUITE 250
SCOTTSDALE, AZ 85251

---

**PARTIES**

**ASSIGNEE/NEW LENDER:**
BUNGALOW SERIES IV TRUST;
7114 E. STETSON DR. SUITE 250
SCOTTSDALE, AL 85251

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Section: 25 Lot: 362 Block: 8369
Loan No: ███████

Space above for Recorder's use _____

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES IV TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE BUNGALOW SERIES IV TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 12/13/2005
Original Loan Amount: $160,000.00
Executed by (Borrower(s)): YAN KLIG & LEONID MANDEL
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR AMERICAN HOME MORTGAGE, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book/Liber/Volume N/A, Page N/A
Document/Instrument No: 2005000699441 in the Recording District of Kings New York City, NY, Recorded on 12/20/2005.

Chain Exhibit: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **1 EAST 72ND STREET, BROOKLYN, NEW YORK 11234**

*This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.*

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: 3/17/2021

US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES IV TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT

By: LISA V. HARRIS          POA Batch#12099          Witness Name: JAMES JACKSON
Title: VICE PRESIDENT       POA was recorded in New York NY on
                            3/23/2021 Inst#2021000106966

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of          FLORIDA
County of         PINELLAS

On 3/17/2021, before me, WANDA M. HIATT, a Notary Public, personally appeared LISA V. HARRIS, VICE PRESIDENT of/for MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES IV TRUST, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of FLORIDA that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that LISA V. HARRIS, signed, sealed, attested and delivered this document as a voluntary act in my presence in the County of PINELLAS, State of FLORIDA.

Witness my hand and official seal.

(Notary Name): WANDA M. HIATT
My commission expires: 11/08/2024

WANDA M. HIATT
NOTARY PUBLIC · STATE OF FLORIDA
COMMISSION # HH54376
My Commission Expires NOVEMBER 8, 2024

## EXHIBIT "A"
### Assignment Chain

| | |
|---|---|
| Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR AMERICAN HOME MORTGAGE, ITS SUCCESSORS AND ASSIGNS |
| Borrower: | YAN KLIG & LEONID MANDEL |
| Origination Balance: | $160,000.00 |
| Origination Date: | 12/13/2005 |
| Mortgage Recording Details: | Recorded: 12/20/2005; Book: N/A; Page: N/A; Instrument: 2005000699441 |

| | |
|---|---|
| Assigned From: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN HOME MORTGAGE, ITS SUCCESSORS AND ASSIGNS |
| To: | OHIO SAVINGS BANK |
| AOM Recording Details: | Recorded 09/06/2006; Book: N/A; Page: N/A; Instrument: 2006000502048 |

| | |
|---|---|
| Assigned From: | FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR AMTRUST BANK F/K/A OHIO SAVINGS BANK |
| To: | RESIDENTIAL CREDIT SOLUTIONS, INC. |
| AOM Recording Details: | Recorded 07/01/2011; Book: N/A; Page: N/A; Instrument: 2011000232156 |

| | |
|---|---|
| Assigned From: | RESIDENTIAL CREDIT SOLUTIONS, INC. |
| To: | MTGLQ INVESTORS, L.P. |
| AOM Recording Details: | Recorded 11/05/2014; Book: N/A; Page: N/A; Instrument: 2014000366283 |

| | |
|---|---|
| Assigned From: | MTGLQ INVESTORS, L.P. |
| To: | U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE TIKI SERIES IV TRUST |
| AOM Recording Details: | Recorded 03/03/2021; Book: N/A; Page: N/A; Instrument: 2021000076260 |